Chief Justice Bibb
delivered the Opinion of the Court.
On the 31st May, 1780, Stephen Trigg made an entry for four hundred acres of land, upon which a survey was executed on the 3d of March, 1783, and thereupon a grant issued on the 1st of November, 1782, in the name of Win. Trigg, who died in August 1782.
Stephen Trigg published his last will and testament on the 20th of September, 1700. Which was duly proved and admitted to record in the supreme court for the district of Kentucky, in March 1783, by which lie makes this disposition of his estate:
“It is my will, after my death, and my just debts are paid, that my estate shall be equally divided among my wife and three children, if my wife should not be with child at my death, but if she is, then among her and my four children; this division I *176 do not want made until my eldest son comes of age, but the whole kept together for the use of my family; unless my said wife should take it into her head to turn fool and marry; then, and in that case, I desire a division should be made, and the part I leave to my wife is only during her life, at her death to be equally divided among those of my children then alive; the parts given to my children, is to them, their heirs and assigns forever, and I wish to have my children well educated, and my family genteelly supported, it is my desire that my executors sell such, and so much of my lands as they may think proper, and then lay out the money in the purchase of negroes, and educating and maintaining my children and family, and any other way that they may think best, and for this purpose, as well as executing ¿every part of this, my last will and testament, I do appoint my brothers Abraham and Daniel Trigg and my brothers-in-law William Christian, William Flemming and Caleb Wallace my executors.”
Widow’s re-alTbenefit" °f 'vilRr the
Evidence.
Upon the probate of this will, the widow renounced in court, all the benefit of the devises to her, and declared she would not accept thereof.
At the death of Trigg, in August 1782, he had four children then born, and his wife was then pregnant with the fifth, who married David Logan, by whom she had Stephen Trigg Logan, the lessor of the plaintiff.
This fifth child (the mother of the lessor of the plaintiff,) died in 1813, and her husband David Logan, died since the institution of the ejectment.
The five children of Trigg all lived to years of maturity, and the widow married Robert Daniel.
The lessor of the plaintiff, Stephen Trigg Logan, the son of the fifth born child of Stephen Trigg, the testator, claimed one fifth part of the said tract of 400 acres of land, and upon the foregoing evidence of the title, recovered a judgment for one fifth thereof, against Adams, who was in possession of the land, so granted in the name of Stephen Trigg, of the date of the ejectment.
Decision of the circuit court.
Land held by entry, descends to tho heir, or may-have been devised under tho British or our former statute of wills.
Grants issue’d after grantee's death, vest tho land in the heirs or devisees.
Trigg devised his estate to his wife and throe children, if his wife should not be en-ccint at his death, but if she should, then to her and his four children, and he lived till his wife had the fourth child, and was enceint of tho fifth: held that all the children took an equal share of the estate.
Upon this evidence of title given by the plaintiff, (the defendant not giving any evidence) the court refused to instruct the jury to find as in case of a non-suit, but instructed the jury, that if they believed the evidence, the plaintiff had shown title to one fifth of the tract of land.
At the time of the publication of the will, Trigg, the testator, had an inchoate right to the land by the entry of 1780. That right was devisable according to the statute of wills, as it then stood. Such interest was descendible, and of course devisable, according to the settled construction of the English statute of wills. The case of Gist’s heirs vs. Robinett, (3 Bibb, 5) renders farther remark or citation unnecessary on this point.
The grant which issued subsequently, in the name of Trigg as grantee, although he was then dead, is nevertheless, a valid grant, by force of the statute of 1792, 1 Litt. laws, p. 160, (2 Digest, 1053.) This statute vests the estate in the devisees in the same manner as if the grant had issued in the lifetime of the grantee. (Hansford vs. Minor’s heirs, 4 Bibb, 385. Lewis vs. McGee, 1 Marsh. 199.)
When the testator published his will, lie had three children then born; before his death a fourth was born, and at bis death his wife was pregnant of his fifth child, afterwards Mrs. Logan. From the devise of the estate to be equally divided between the wife and four children, it is argued that the four first children should take the estate to the exclusion of Mrs. Logan. The devise is, “that my estate shall be equally divided among my wife and three children, if my wife should not be with child at my cleath, if she is, then among her and my four children.” It would be hard to designate, by any process of reasoning, which ofthc four children should take to the exclusion of the other. There is nothing in the will from which an intention can be ascribed to the testator to pretermit any one of his children, much less to pretermit and leave unprovided, Mrs. Logan, who conics within the very letter and spirit of the proviso, declared by the testa-ndo?, for directing the division among four children *178 instead of three. If any one is to be excluded, it cannot be Mrs. Logan. But the truth is, the testator did not intend to exclude either of the five, and to do so would violate the intention of the will, as collected from the particular sentence in which the word four occurs, as well as from the after provisions respecting the education and maintenance of his children, and the division amonst all after his wife’s death. No motive can be assigned to the testator for excluding any of his children; the will furnishes nothing to designate the particular child to be excluded; no child is named among the three or the four who are to have the estate; they are described only as my three children, and as my four children. The exclusion of one is attempted by laying stress upon the word “four.” It must be admitted that literally and numerically, four are not five. But it is true, that to avoid an absurdity, uncertainty and confusion which would defeat the intention of the testator, and to give effect to the plain meaning of the will collected from all its parts, the word “four” must not be taken literally, as a numerical description of the children, and parts into which the estate is to be divided, but in the sense in which the testator used it, and for the purpose for which he introduced it. The-testator has sufficiently manifested by the manner and purpose for which he used the words “my four children,” that be intended thereby to include the children born after the time of his writing his will. He had three children born at the time he was writing the will, those three are to have his estate, “if” (say-s he) “my wife should not be with child at my death, but if she is, then among her and my four children.” These provisions, in manner, matter and substance, show the intent of the testator to provide for his after born, as well as for his then born children; his mind stretched from the time when he was dictating the will, to the day of dis death, and to his child which might he born after his death, all his children, born and xinborn, are intended to be placed on an equality in support, education, and division of his property. The testator miscalculated the time of his death and the number of his children, but he clearly intro *179 duced the word “four,” with such allusions and connections, as to explain that he meant to divide his estate equally among his three children then born, and those to be after born. To stickle at the word “four” and thereby exclude one of the children from a share of the estate, would be to stick in the bark, to dishonor the affections of the father, to pervert the meaning by sacrificing the whole will to a particular word.
Husband is tenant by by the courtesy, unless coverture, but the heirs of tlie Wlfe SYis Hfe!01
Triplett, for plaintiff.
TJie life and being of David Logan, the husband of Mrs. Logan, and father of Stephen Trigg Logan, is no obstacle in the way of the title and right of the lessor, said Stephen, to recover in ejectment, Seisin in fact and deed in the lifetime of the wife is one of the essentials to consummate the right of the husband as tenant by the courtesy; a seisin in law will not suffice. There is no evidence conducing to prove a seisin in deed, so as to give David Logan the right as tenant by the courtesy. Upon the death of Mrs. Logan, her son, the lessor of the plaintiff, inherited her interest in the land, and was capable of making the lease, notwithstanding his father was living at the date of the ejectment.
It seems to the court that there is no error in the judgment of the circuit court.
It is affirmed with costs.